Good morning, your honors, and may it please the court. I'm Douglas Harper. I am counsel for Mr. Roberto Alamo. He is the plaintiff in the underlying proceedings. I represent him now, even though I did not represent him in any of the proceedings in the district court. We are here today to ask the court to reverse and remand the dismissal of four counts in the third amended complaint. These are a count for Title VII discrimination based on hostile work environment, that's count number one. Title VII disparate treatment based on national origin, that's count number two. Title VII retaliation, that's our count number three. And there's a 1983 equal protection clause violation, that's count number four. And we are also here to bring to the court's attention that the hellish workplace standard, which this court has disfavored, is still being cited by district courts in the circuit as controlling precedent. And we ask this court to expressly overrule that holding. It's this court's holding in Perry. At the beginning, I wonder if you could perhaps elaborate a little bit. I understand there was some discovery in this case taken in the district court at the pleading stage. I believe there was. Could you tell us a little bit about that, how much discovery was taken? Well, Your Honor, I only know what the record discloses. Yes. I believe there was some discovery. I don't know the full extent of it personally, but my understanding is there were no. Yes, Your Honor. I don't mean to impinge on your time. No, no, please. If the court's interested in this matter, I want to give the court a chance. Well, it's very unusual for us to see a case like this up here on a judgment on the pleadings rather than a summary judgment, and that's why I was concerned. Well, this actually was not summary judgment. I understand. That's why I'm concerned. This was with 12b-6. 12b-6. There was some discovery. Your Honor, I don't want to give the impression that the case was dismissed without giving the plaintiff time to take discovery. The case actually was dismissed on plaintiff's third amended complaint, and so it is not our position that we were denied the opportunity to take discovery, but it is our position that the third amended complaint did state a claim on all of the four counts that we raised. And our strongest argument is the dismissal of count number one, the Title VII hostile work environment based on national origin. And just as background, based on what the pleadings say, Mr. Alamo was and currently is a Chicago firefighter, and the pleadings describe him as a Latino of Puerto Rican descent. He worked as a Chicago firefighter, and during the time of his employment, he was subjected to various forms of discrimination based on national origin. And we highlight four different kinds. There were racial slurs, which we identify in our opening brief. I won't quote them in this courtroom, but they are what the court has identified previously as unambiguously racial epithets. These are not mere crude comments or offending comments, but these are unambiguously racial epithets. They mix vulgar profanity together with references to Mr. Alamo's national origin. I'd like to stop you here, if I might. Thank you, Mr. Harper. And ask you about the altercation with Stefan and how we can know that there is a connection between that and Mr. Alamo's national origin. Because even accepting Mr. Alamo's statement that he said that he could not handle the harassment any longer, we still don't know on what basis he was harassed. In other words, was it because he was thought of as not being a team player? Was it because he was thought of as being unpleasant to work with? Was it because he slept through a run and Stefan felt that he had jerked his responsibility? And I guess the same can be true of Stefan saying, I don't like your kind, because Alamo had just slept through a cold. And isn't that just as likely that the kind Stefan doesn't like is the kind of firefighter who sleeps through calls and Stefan believes is shirking his responsibilities? Well, in answer to Your Honor's question, yes, it's possible. It certainly is possible that Stefan's comment, I don't like your kind, was a harmless comment, and it's possible that that harmless comment might have been directed at the fact that Mr. Alamo was sleeping because he did not feel well. He wasn't shirking his duties, but he was sleeping because he didn't feel well. So that is possible. However, I would ask the court to take note that the rule governing how the pleadings are to be viewed is not to look at the pleadings and then take the view that might be possible and that favors the defendant and assume that that's actually what happened, but it's actually the contrary, that the pleadings are to be viewed in the light most favorable to the plaintiff. And so even if it's possible that Captain Stefan did have a harmless meaning behind his comment, I don't like your kind, even if that's possible, I would ask the court to view that comment in the light most favorable to Mr. Alamo and view it as yet one more instance of what he had been complaining about all along, that he's being subjected to racial discrimination based on national origin, ethnic slurs, unambiguously ethnic slurs. This is viewing the pleadings in the light most favorable to him. This is just one more example of that. I don't like your kind. I'd ask the court to ask itself what is meant by the reference to your kind. Well, now, I mean, we have to take the pleading that is before us, but how do we deal, do you think, with the fact that he didn't plead anything about derogatory name calling until after his first complaint was thrown out? You know, one would think that a thing like that would be the most memorable and important enough to, you know, include in the first complaint. Yes, Your Honor, I would agree, and I cannot explain why that, why counsel in the underlying proceedings did not clarify those unambiguously racial epithets with greater clarity sooner. But I believe there were general references to derogatory name calling, but it's true. The specific unambiguously racial epithets were not identified until the third amended complaint. However, I would again ask the court to view the pleading that has been dismissed and not to hold it against Mr. Alamo that prior pleadings, which are not before the court,  it's this third amended complaint now that the district court did give leave to file. And so apparently, for whatever reason, the district court granted Mr. Alamo leave to replete, to add greater detail, and this is what he added. And these are unambiguously racial epithets. And before I proceed, I want to make sure that I've answered Judge Roven's question. Your Honor, have I? Sure. And if not, I'm perfectly happy to continue speaking about this matter. But if there are no other questions about. I do have another question because Mr. Alamo didn't tell Lieutenant Bliss about the altercation, and he didn't make a claim that it was motivated by national origin. I mean, you know, if you could help me understand why. Oh, yes. Your Honor, I just want to be, to make sure that I'm clear on the altercation that Your Honor was asking about. I think I still am. I think I'm still on that altercation because he didn't tell Lieutenant Bliss about it. Well, there are two altercations involving Captain Stephan. One occurred in the TV room that involved the comment, I don't like your kind, and the chest bumping. And then that was followed soon after, but it was a separate altercation also involving Captain Stephan, regarding where Mr. Alamo was pushed into a wall multiple times. And Lieutenant Bliss actually witnessed that. He saw that happen. Wasn't that at the same time? It was not actually the same. It was the same day, but it was not the same time. It was soon after, but it was in a different location in the firehouse. The first occurred in the TV room. The second occurred in a different location in the firehouse. But the second is important because Lieutenant Bliss observed it himself. He saw it happen. And so I have arguments to address that point, but I want to get back to Judge Rovner's question. Your Honor, are you asking about the incident in the TV room? Well, I was under the impression that it all happened in the TV room. No, Your Honor. They were separate. The TV room incident did not happen where Lieutenant Bliss observed it, but the pushing into the wall did. Lieutenant Bliss directly saw this, and he actually inquired with—he asked Mr. Alamo what was going on here. And Mr. Alamo replied, I can't handle this any longer. And not being able to handle it any longer was a direct reference to the discrimination that Mr. Alamo had— Well, of course, Lieutenant Bliss then called in the higher honcho, whose name I can't recall. Chief Chikorotis. Yeah, who came to talk to Mr. Alamo. Yes. In other words, Lieutenant Bliss did something about that incident. Yes, he did something, but he did not do enough to remedy it. And I would point out that Mr. Alamo, he did not cease to be a firefighter on that day. He remained a firefighter. And so it was incumbent on Lieutenant Bliss to take steps to actually remedy that situation, conduct an investigation, speak to Captain Stephan himself, do something to look into what he personally witnessed after Mr. Alamo had put him on notice and made complaints to Lieutenant Bliss in July, August, and November of 2010, and also in April, July, and August of 2011. Those are referenced in the third amended complaint at our appendix, page 20, at paragraph 15. These are all complaints that Mr. Alamo made to Lieutenant Bliss, and so Lieutenant Bliss was actually on notice personally himself that Mr. Alamo had been suffering from actual harassment that bothered him enough that he complained about it at least on those different occasions. And so when Lieutenant Bliss saw this take place, it was incumbent on him to do something, to take some action. It's true that Lieutenant Bliss did notify Chief Chikorotis, but also if we are to connect Lieutenant Bliss with Chief Chikorotis, we know what Chief Chikorotis did. He asked Mr. Alamo not to do anything, take no action, please do not involve the police. And in fact, what Chief Chikorotis did is he took Mr. Alamo aside to a different firehouse and sat him down for a private conversation to try to talk him out of involving the police and bringing charges against Captain Stephan. And Chief Chikorotis indicated that he knew about the underlying discrimination. Is there any allegation in the complaint that Chief Chikorotis might have had something to do with the slow pace of the health evaluation when your client attempted to return to duty? Your Honor, I must admit it's not directly pleaded in the complaint, no, it is not. But I respectfully submit to the court that it is a reasonable inference based on Chief Chikorotis' response of getting angry with Mr. Alamo when Mr. Alamo insisted on proceeding and complaining about this matter to the police. Your Honor, as I see my red light is on, I'm happy to continue addressing questions from the court. I think if your red light's on, your time is up. All right, then. Thank you, Your Honor. I will give you three minutes rebuttal and I will give your opposing counsel three additional minutes at this time to even things out. Thank you, Your Honor. Thank you. Good morning, Ms. Dimitrieva. Good morning, Your Honors, and may it please the court. My name is Irina Dimitrieva. I am a counsel for the city and for the individual defendants here. Just to briefly answer your Honor's question, there was, in fact, discovery conducted in this case. It was conducted on the second amended complaint, which was the third version of Mr. Alamo's complaint, to which the city answered. And it was not only conducted for two years. Actually, the written discovery was completed, so the deadline for completion of the written discovery passed. Can you give me any idea of how much discovery was taken? To the extent that I know, it was a substantial, considerable written discovery. There were a lot of documents produced. They weren't interrogatories. It was a substantial amount of written discovery. Were any depositions taken? To my knowledge, no. There was a request for Mr. Alamo's deposition. It was in the process of being scheduled. It's been rescheduled several times. And while the scheduling of the deposition was going on, his new counsel filed a third amended complaint, the fourth complaint in this case that's under review now. Let me, please, go ahead. And this is the first complaint in which he actually asserted for the first time the claim for hostile work environment, Title VII hostile work environment. The second amended complaint on which the discovery was conducted, it did contain the race discrimination claims. I see. So the claims of disparate treatment, those were the claims on which the discovery was conducted. Your Honors, our position is the third amended complaint was properly dismissed in this case. Here's a, if I may, just because it may help you keep on track, my basic problem with your case is that this was dismissed on the complaint and not at summary judgment. And so many of the factors that we consider in trying to determine whether there's a case been made out or not are very fact specific. And I'm just wondering if those facts really have been developed enough that we know whether this firefighter has no case as a matter of law, or whether he ought to be given a chance to develop and tell us a little bit more about the atmosphere in which this all happened. Yes, Your Honor, I understand. Context, it seems to me, is all important and your brief doesn't convince me that we've had a chance to deal with the issue of context. On the hostile work environment claim, Your Honor, the central incident that's a focal point of Mr. Alamo's complaint, the September 2011 incident with Stephan, there is no allegation whatsoever that it was reported to the city. So he doesn't- There's no, I'm sorry, there's no allegation- That this incident was reported to the city. The chest bumping incident with Stephan in the television room and the comment about your kind, Mr. Alamo never told anybody about it. He did not report this incident. And so with respect to his hostile work environment claim against the city, I mean, this incident is, as a matter of law, not properly a part of the determination. Isn't that determinative of whether Captain Stephan is part of management or is just a fellow employee? He's not. He's a co-worker. He's a co-worker and counsel admitted it on his briefs. Why? Because it's affirmatively pleaded in the complaint that he has no supervisory responsibility over Mr. Alamo. And under the Supreme Court case law, the supervisor for Title VII purposes is the person who has authority to inflict a tangible employment action over Mr. Alamo, like firing, hiring, tangible action. And there is no allegation of that here. And indeed, counsel acknowledged in his reply brief to this court that for purposes of Title VII claims, Stephan is a co-worker. He is a co-worker for purposes of Title VII claims. You say that's been conceded? That's been conceded, yes, in his reply brief. Okay. So we're dealing here with a co-worker harassment. It's an inappropriate, obviously, behavior that was never reported to the city. Which incident did the lieutenant to whom? Bliss witnessed? Which incident did he witness? The first or the second? Okay. So the setting is such that Mr. Alamo is falling asleep in the television room in the firehouse while his team is on the run. Yeah. Stephan comes into the television room, witnesses that, and awakens Mr. Alamo and just bumps him, allegedly. Certain time passes. Mr. Alamo's engine company comes back from the run, and all firefighters are called to the apparatus floor. At that time, which could have been, I don't know, like an hour late or more, everybody's going down the stairwell. And at that point, it's alleged that Stephan pushed Mr. Alamo against the wall, and Lieutenant Bliss witnessed that pushing against the wall. Lieutenant Bliss is asking Mr. Alamo, what is going on here? And Mr. Alamo is saying, I'm tired of this harassment and violence, and I'm going to go outside and call 911. And even at that point, I mean, there is no allegation that he told Lieutenant Bliss that he believed this pushing was an account of his being Puerto Rican. And Title VII is concerned only with harassment based on protected characteristics, national origin, race. It does not protect against all workplace harassment. Yes, it was potentially a violent situation. It was inappropriate conduct. But Title VII does not protect against all workplace friction. It protects only against friction based on protected characteristics. There is no allegation here whatsoever. If I can interrupt. Yes. The incident when he woke him up, that was earlier? Yes, and it was not witnessed by Lieutenant Bliss. Okay. But we do know in the complaint he says that repeatedly he warned, he did tell his superiors about harassment. Do we know whether those instances were before, any of those instances were before or after? In other words, management was clearly aware of the fact that this guy had complaints about the way he was treated in the firehouse, right? In paragraph 16, Mr. Alamo alleges that he complained to Battalion Chief Annis and Bliss about the following harassment. That he was detailed excessively compared to his colleagues. And this allegation is not connected to his national origin at all. He's just excessively detailed. Several incidents of coworkers stealing or throwing out Alamo's food in the house. Again, no connection to his national origin whatsoever. And an incident, one incident, with a firefighter, also a coworker, Sheehan, who directed racist and derogatory comments regarding Alamo's Puerto Rican national origin and verbally harassed and physically assaulted Alamo in or around March of 2011. So what we have here is his complaints to Lieutenant Bliss about two practices that are not connected to Mr. Alamo's national origin and an isolated physical altercation with a coworker firefighter, Sheehan. So we have a complaint regarding one isolated incident with firefighter Sheehan. And that's the only incident that, in your view, the complaint says that was the only incident that he ever complained to management about? The physical altercation, yes. Yes. That's how you read the complaint? That is the only incident, yes. He never told management on any other occasion that he was being harassed? There is paragraph 15 that contains the general allegation that throughout his tenure with the fire department, which he spent three years, he was harassed and verbally abused by other firefighters in his company. And that is the paragraph in which he uses the two derogatory terms that were used against him. And it says Alamo informed Bliss on numerous occasions of the harassment that he endured. But again, it doesn't say the racial harassment or the harassment he endured from his fellow firefighters. Well, he goes on and he talks about including but not limited to derogatory and racist comments, including that we need not in open court say what the other firefighters said. And so we are left with he is complaining of harassment. He certainly believed that he was harassed by his co-workers. But in terms of harassment that matters for Title VII purposes, we are left with two derogatory terms over a three-year period of time and one isolated physical altercation with firefighter Sheehan. And that's all we have. That is all we have. Yeah, but we're at the complaint stage. Does he have to enumerate every specific incident in the complaint? Your Honor, this is the conduct uniquely within Mr. Alamo's knowledge in a type of a claim that he's a certain, basically a racial discrimination, hostile work environment. It has to be severe enough to make his working conditions basically to alter the conditions of employment. But if you sit him down someday and depose him, he'll probably tell you every single one of them. Your Honor, there were three motions to dismiss filed in this case, three motions to dismiss, in which the city argued it's just not enough. Your allegations here is just not enough to make a connection with your national origin, and it's not enough to show that you were ever harassed by the city. I'm sure that was the city's point of view in the case, but is that what the law requires? But in response to this motion to dismiss, the law requires Mr. Alamo to provide more detail. Yes, he doesn't have to do it in the complaint. On what authority? I don't have a case in front of me, Your Honor. I would be happy to supply it. Stickball and Twombly require that he give more than he gave here? Not in the complaint, but in response to a motion to dismiss. In response to a motion to dismiss, when the city attacks, his complaint is legally insufficient. He doesn't plead enough. It's totally in his interest, in Mr. Alamo's interest, to provide more facts of which he's uniquely aware of. Sounds to me like you're turning a motion to dismiss into a motion to grant summary judgment. I would disagree, Your Honor, with all due respect, because otherwise we would never be able to attack a hostile work environment claims on a dismissal motion. There would be no attack. He's alleging he had two slurs over a three-year period of time and one altercation with a co-worker. And if his position is taken, there would never be a situation in which a motion to dismiss a hostile work environment claim would be possible. There would be no situation. And, Your Honor, so this is our position on the hostile work environment claim. I want to make sure that I address, you know, briefly the disparate treatment and retaliation claims that counsel did not spend a lot of time on. But just briefly our position is that those claims, you know, we feel very strongly they are not adequately pled, because the disparate treatment claim requires a showing of adverse employment action. Mr. Alamo alleges he excessive detailing of which he provides no factual allegation, plausibly suggesting that this practice was based on his national origin. And he's also complaining about a delay in return to duty. But, again, based on the allegations of his own complaint, a delay in medical clearance had nothing to do with his national origin. And, indeed, the people who were requesting additional information from Mr. Alamo are not the people who allegedly harassed him at the firehouse. And, indeed, he doesn't even allege that the doctors who were requesting additional medical documents were aware of his prior complaints. And so there is no causal connection here. And in terms of, again, excessive detailing, to constitute a materially adverse employment action, there has to be a significant change in employment status. And yet, you know, Mr. Alamo, after two years, you know, of potential discovery that he could have taken advantage of, he pleads no impact on his compensation, no impact on his benefits. He does not say whether it affected his job responsibilities or authority or created a humiliating environment. He does not take this opportunity to compare himself to other, you know, firefighters of which he could have inquired during the two years of discovery. So there is nothing that tells us that excessive detailing constitutes a materially adverse employment action. And with respect to a claim for retaliation, again, it suffers from the same defects. And mostly, again, there is no factual allegation plausibly suggesting a causal connection between a delay in returning to his duties and his prior complaints of discrimination to his superiors. And the, you know, his only reply, he's arguing, you know, Chief Chikorotis. But, I mean, there is no connection whatsoever between, you know, Chief Chikorotis and people in the medical section who are clearing at any, you know, particular moment with 200, up to 200 firefighters who are, you know, returning to duty. And again, we're dealing here with a person who is returning to duty as a firefighter. I mean, it's a dangerous occupation. And he's just been on six months of medical leave with potential post-traumatic stress disorder diagnosis. And he has been referred to psychiatrists. It was imminently reasonable for the medical section to require additional medical documentation from Mr. Alamo. And he actually pleads in his complaint that it was his own decision not to provide additional medical documents that delayed his return. I see that my time is over. If you want us, we would ask you to affirm the decision of the district court. Thank you, Ms. Dimitri. Mr. Harper, do you have a rebuttal? Yes, I do, Your Honor. Thank you. And I would like to begin by emphasizing once again that what we have here, what I ask the court to focus on is that in count one, we have unambiguously racial ethnic slurs and physical violence together at the same time. And this court has previously held that in some instances, the unambiguously ethnic slur by itself, under some circumstances, that can be so severe as to create a hostile work environment. And so here, we not only have more than one instance of different unambiguously ethnic slurs, vulgar ethnic slurs. We not only have that, but we also have violence. We have physical violence against Mr. Alamo, his person. We have violence against him, himself. And we also have violence against his property. And I understand. How do we factor in the fact that it was someone who was not in any way over Mr. Alamo? Well, that's a correct observation, Your Honor. That Captain Stephan, it is pleaded that Captain Stephan was not his immediate supervisor. But that only impacts this case to the extent that Captain Stephan's conduct then cannot be attributed to the conduct of Mr. Alamo's employer. But still, as a co-worker, his conduct should have been remedied by Mr. Alamo's supervisor, who was Lieutenant Bliss. Lieutenant Bliss was fully aware of what was happening. He witnessed the chest bumping. I'm sorry. He witnessed. But then he did. He called chikoritis. That's not sufficient. I respectfully assert. What? I respectfully assert that calling chikoritis alone was not sufficient. Because no other action. I'm sorry, Your Honor. Please proceed. What should he have done? He called the next highest person in command to come on in and try and work this out. What else should he have done? There's no indication that he did anything else. There's no indication that he looked into it himself. There's no indication that he followed up with Chief Chikoritis to find out what Chikoritis was going to do about it. Lieutenant Bliss had Captain Stephan there under his supervision. And yet there's no indication that any other follow-up was implemented by the city of any kind whatsoever. And we know – I see my red light is on. May I simply finish this? Of course. Thank you, Your Honor. We know what Chikoritis did because he not only drove to the firehouse to speak with Alamo and asked him not to involve the police, but he said that he could help with the harassment at the firehouse if Alamo agreed not to bring charges and not to involve the police. Now, this is the extent of the city's remedy. Charges are assault, I presume. I'm sorry, Your Honor? Charges are assault. Yes. Thank you. Yes. And Chief Chikoritis was willing to help, but only if Alamo agreed to do nothing. And so I ask the Court to consider that and with our other arguments. And, again, I ask the Court to expressly overrule the hellish workplace standard that was set out by this Court in Perry. Thank you, Your Honors. Well, we thank both Mr. Harper and Ms. Dimitrivia for their excellent oral arguments. The Court will take a recess of approximately 10 minutes before going on with the morning's calendar.